DECISION
Plaintiffs-appellants, Victoria's Secret Stores, Inc., Limited Stores Planning, Inc., and The Limited, Inc. (collectively "the Limited Entities"), appeal from the judgment of the Franklin County Court of Common Pleas granting summary judgment in favor of defendants-appellees, Epstein Contracting, Inc. ("Epstein"), Mt. Hawley Insurance Co. ("Mt. Hawley"), and Indemnity Insurance Co. of NA and its successor company, ACE USA (collectively "INA").
Victoria's Secret Stores, Inc. ("Victoria's Secret") operates a chain of retail stores. Limited Store Planning, Inc. ("LSP") is responsible for the construction and remodeling of Victoria's Secret's retail stores. Victoria's Secret and LSP are wholly owned subsidiaries of The Limited, Inc. ("The Limited").
In August 1996, LSP contracted with Epstein for the construction and remodeling of a Victoria's Secret retail store located at 565 Broadway, New York, New York. The contract required Epstein to remove a suspended ceiling and install a new ceiling. Epstein specifically warranted that "all work performed under this contract shall be free from defects in workmanship or materials, shall conform to the requirements of the Specifications and other Contract Documents, and shall be fit and sufficient for the purposes expressed in or reasonably to be inferred from, the Contract Documents." The parties agreed to arbitrate "any controversy or claim arising out of or related to the Contract or the breach thereof."
Although the contract specified that the new ceiling be connected to the building's main steel structural support beams, Epstein decided to install the new ceiling to a second existing suspended ceiling. Epstein completed the work and delivered the remodeled store to LSP in November 1996. In February 1997, the ceiling dropped approximately twelve inches and began to crack. Victoria's Secret contracted with Epstein to repair the ceiling at a cost of $314,523. The store was closed for five months while the repairs were made. Victoria's Secret suffered lost profits of $602,043, and repackaging distribution costs of $5,301.46. There was no property damage other than to the ceiling itself, nor was there any bodily injury.
On April 13, 1999, the Limited Entities filed an amended demand for arbitration against Epstein, alleging claims for (1) breach of contract/indemnification, (2) negligence, and (3) fraud. On October 13, 1999, the arbitrator issued an award in favor of the Limited Entities and against Epstein in an amount of $1,162,388.69. In making his award, the arbitrator stated as follows:
 I, THE UNDERSIGNED ARBITRATOR, having been designated in accordance with the arbitration agreement entered into by the above-named parties, and dated August 15, 1996, and having been duly sworn and having duly heard the proofs and allegations of the parties, and Victoria's Secret Stores, Inc. and Limited Store Planning, Inc. ("Claimant") have made a motion to amend its claim and the arbitrator having agreed to consider same, hereby AWARD as follows:
 Epstein Contracting, Inc. ("Respondent") shall pay to Claimant the sum of One Million One Hundred Sixty Two Thousand Three Hundred Eighty Eight Dollars and Sixty Nine Cents ($1,162,388.69), for their claim, itemized as follows:
Repair Cost $ 314,523.00
Distribution Cost $ 5,301.46
Lost Profits $ 602,043.00
Attorney's Fees $ 204,521.23
Total $ 1,162,388.69
 The administrative fees and expenses of the American Arbitration Association ("the Association") totaling $6,914.30 shall be borne as incurred and as previously paid to the Association.
 The compensation and expenses of the arbitrator totaling $4,800.00 shall be borne equally and deducted from deposits previously advanced to the Association.
 This Award is in full settlement of all claims submitted to this Arbitration. All claims not expressly granted herein are, hereby denied.
The arbitration award was confirmed by the Franklin County Court of Common Pleas in a judgment rendered on January 18, 2000, and upheld by this court on March 8, 2001.
On March 10, 2000, the Limited Entities filed the instant lawsuit, pursuant to R.C. 3929.06, seeking coverage for the arbitration award under insurance policies issued by Mt. Hawley and INA. Mt. Hawley was Epstein's primary insurer, covering losses up to one million dollars. INA were Epstein's excess insurers for losses in excess of one million dollars. The parties filed cross-motions for summary judgment on the issues of coverage. In granting summary judgment in favor of Mt. Hawley and INA, the trial court made the following observation:
 * * * The parties agree that the ceiling failed as a result of the Defendant Epstein's failure to comply with the contract between the Plaintiffs and the Defendant Epstein which called for the removal of all existing suspended ceilings prior to the installation of a new ceiling in the store. Thus, the dispute in the present case arises over the determination of whether the Defendant Epstein's failure to comply with the Construction Agreement is covered by the Mt. Hawley policy.
The court concluded that the Limited Entities were not entitled to coverage because the Mt. Hawley policy expressly excluded coverage for damages based on liability assumed in a contract.
Appellants now assert the following assignments of error:
Assignment of Error No. 1
 The Trial Court erred by invading the province of the arbitrator in holding that the arbitration award in favor of Plaintiffs-Appellants was based on the general contractor's breach of a construction agreement when neither the underlying record nor the arbitration award so stated.
Assignment of Error No. 2
 The Trial Court erred in its interpretation and application of the contractual liability exclusion in the insurance policies issued by Defendants-Appellants to the general contractor.
Assignment of Error No. 3
 The Trial Court erred in denying Plaintiffs-Appellants' Motion [for] Summary Judgment, and in granting Defendants-Appellees' Motion for Summary Judgment.
Appellate review of summary judgment motions is de novo. Helton v. Scioto Cty. Bd. of Commrs. (1997), 123 Ohio App.3d 158, 162. "When reviewing a trial court's ruling on summary judgment, the court of appeals conducts an independent review of the record and stands in the shoes of the trial court." Mergenthal v. Star Banc Corp. (1997),122 Ohio App.3d 100, 103. Civ.R. 56(C) provides that summary judgment may be granted when the moving party demonstrates that: (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made. State ex rel. Grady v. State Emp. Relations Bd. (1997), 78 Ohio St.3d 181, 183.
When a motion for summary judgment has been supported by proper evidence, a non-moving party may not rest on the mere allegations of his pleading, but his response, by affidavit or as otherwise provided in Civ.R. 56, must set forth specific facts showing that there is a genuine triable issue. Civ.R. 56(E); Jackson v. Alert Fire Safety Equip., Inc. (1991), 58 Ohio St.3d 48, 52. To establish the existence of a genuine issue of material fact, the non-moving party must do more than simply resist the allegations in the motion. Rather, that party must affirmatively set forth facts which entitle him to relief. Wing v. Anchor Media, Ltd. of Texas (1991), 59 Ohio St.3d 108, 111. If the non-moving party "does not so respond, summary judgment, if appropriate, shall be entered against the party." Civ.R. 56(E).
We address appellants' three assignments of error simultaneously, as they all pertain to the trial court's conclusion that appellants are not entitled to recover, as a matter of law, under the insurance policies.
As an initial matter, we note that New Jersey substantive law governs the issues before this court. "It is well-settled in Ohio that in cases involving a contract, the law of the state where the contract is made governs interpretation of the contract." Nationwide Mut. Ins. Co. v. Ferrin (1986), 21 Ohio St.3d 43, 44. The parties agree that, because the Mt. Hawley and INA insurance policies were purchased in New Jersey, New Jersey law applies.
Under New Jersey law, "words of an insurance policy are to be given their plain, ordinary meaning." Gibson v. Callaghan (N.J. 1999),730 A.2d 1278, 1282. Ambiguities in insurance contracts "are to be interpreted in favor of the insured." Id. In the absence of ambiguity, however, "courts `should not write for the insured a better policy of insurance than the one purchased.'" Id. We conclude that the Mt. Hawley insurance contract plainly excludes coverage for the damages at issue in this case and that, accordingly, appellees were entitled to summary judgment.
The Mt. Hawley insurance policy provides, as follows, in relevant part regarding the scope of coverage:
SECTION I — COVERAGES
COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY
Insuring Agreement.
 a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. * * *
* * *
 b. This insurance applies to "bodily injury" and "property damage" only if:
 (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory" * * * [.]
An "occurrence" was defined in the policy as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."
Appellees argue that the property damage at issue is not covered because it was not caused by an "occurrence." Citing to definitions in Black's Law Dictionary, appellees contend that the ceiling collapse was not an accident and, therefore, could not be an occurrence under the terms of the insurance contract. We disagree.
We conclude that, under New Jersey insurance law, the ceiling collapse was an accident. In Voorhees v. Preferred Mut. Ins. Co. (N.J. 1992),607 A.2d 1255, 1264, the New Jersey Supreme Court stated as follows:
 We adhere to the prevalent New Jersey rule and hold that the accidental nature of an occurrence is determined by analyzing whether the alleged wrongdoer intended or expected to cause an injury. If not, then the resulting injury is "accidental," even if the act that caused the injury was intentional. That interpretation prevents those who intentionally cause harm from unjustly benefiting from insurance coverage while providing injured victims with the greatest chance of compensation consistent with the need to deter wrong-doing. It also accords with an insured's objectively reasonable expectation of coverage for unintentionally caused harm. [Emphasis added.]
None of the parties have argued that Epstein intended or expected for the ceiling to collapse and cause injury. Accordingly, we conclude that the property damage at issue was the result of an "occurrence."
Even though the damages were caused by an occurrence, however, we conclude that the Mt. Hawley policy does not provide coverage because the express exclusion for contractual liability applies. The contractual liability exclusion states, as follows, in pertinent part:
Exclusions.
This insurance does not apply to:
* * *
Contractual Liability
 "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:
* * *
 (2) That the insured would have in the absence of the contract or agreement.
The Mt. Hawley policy expressly excludes coverage for property damage that the insured is obligated to pay "by reason of the assumption of liability in a contract or agreement," unless the insured would have been liable for damages in the absence of the contract or agreement. Appellants argue that the exclusion does not apply because the arbitrator may have awarded damages for negligence, not breach of contract, and, therefore, Epstein's liability might not have been by reason of its contract with LSP. They note that they alleged negligence as one of their causes of action and presented evidence in the arbitration in support of their claim that Epstein was negligent. They contend that the trial court erroneously concluded that the parties agreed that the ceiling failed as a result of Epstein's breach of contract and that such a conclusion invaded the province of the arbitrator, who may have awarded damages based on negligence rather than breach of contract.
We agree with appellants that the arbitration award is vague as to the prevailing legal theory. We conclude, however, that, under either theory, Epstein was obligated to pay by reason of assumption of liability in a contract or agreement, and that Epstein, as a general contractor, would not have been liable to its customer for the types of damages at issue in the absence of the agreement.
Appellants' cause of action for negligence was based upon the obligations that Epstein assumed by virtue of its contract with LSP. In their demand for arbitration, appellants alleged that, pursuant to the terms of the contract, Epstein warranted that all work would be free from defects in workmanship. In their negligence claim, appellants alleged that Epstein breached its duty to perform the work in a workmanlike manner.
As the New Jersey Supreme Court has observed, "[w]here the work performed by the insured-contractor is faulty, either express or implied warranties, or both, are breached. As a matter of contract law the customer did not obtain that for which he bargained." (Emphasis added.) Weedo v. Stone-E-Brick, Inc. (N.J. 1979), 405 A.2d 788, 791. The agreement defines the duty of care. See id. We conclude that, in this case, it was the agreement that imposed upon Epstein the duty to perform in a workmanlike manner. "Coverage which is not otherwise provided under a [comprehensive general liability policy] cannot be created simply by a change in the form of words by which the damage claim is expressed." Id. at 793, n. 4. Epstein's liability for damages was assumed by virtue of contract, regardless of the theory of recovery.
Appellants also argue that, to the extent that the award compensated Victoria's Secret and/or The Limited, liability could not be based upon a contract or agreement because Epstein only contracted with LSP. Because the damage award compensated the Limited Entities, appellants argue, the contractual liability exclusion does not apply. We disagree.
In their demand for arbitration, the Limited Entities alleged that Epstein contracted with LSP for the remodeling of a Victoria's Secret store and that LSP and Victoria's Secret were wholly owned subsidiaries of the Limited. The Limited Entities further stated that "[i]n order that a complete resolution of this dispute is achieved, LSP joins [Victoria's Secret] and Limited as parties to this arbitration." Having joined LSP in the arbitration proceedings, appellants cannot now argue it is not bound by the arbitration decision. Further, the demand for arbitration did not set forth any separate legal theories of recovery on behalf of Victoria's Secret or the Limited. Under these circumstances, we decline to hold that Epstein is obligated to pay damages for any reason other than for its assumption of liability in its contract with LSP merely on the basis that all the Limited Entities were parties to the arbitration.
For the foregoing reasons, we conclude that Mt. Hawley was entitled to summary judgment.
We likewise conclude that INA, the excess insurer, was entitled to summary judgment. Scope of coverage under the INA policy is defined as follows:
LIMITS OF INSURANCE
 WE shall be liable only for that portion of the ULTIMATE NET LOSS in excess of:
 1. The applicable limits of the UNDERLYING INSURANCE listed in the attached Schedule of UNDERLYING INSURANCE (whether such insurance is collectible or not), or:
 2. With respect on an OCCURRENCE for which no UNDERLYING INSURANCE applies and to which this policy applies, the greater of either:
 a. The applicable limit or limits of liability of any OTHER INSURANCE (whether such insurance is collectible or not), or;
 b. The amount stated in the Declarations as the INSURED'S RETAINED LIMIT.
The Mt. Hawley policy provided the underlying commercial general liability insurance for purposes of the INA policy.
For the reasons we have articulated, there was no underlying insurance because the Mt. Hawley contractual liability exclusion applied. Furthermore, the INA policy does not provide its own coverage, as the INA policy likewise bars coverage by virtue of its own contractual liability exclusion, which excludes "[l]iability assumed by the [insured] under any contract or agreement[.]"
For the foregoing reasons, we overrule appellants' first, second and third assignments of error, and affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
TYACK, P.J., and BROWN, J., concur.